**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **MICHAEL ALEXANDER YOUNG** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-1752** |
| **DISTRICT ATTORNEY'S OFFICE OF NEW ORLEANS, ET AL.** | **SECTION "O"(1)** |

**REPORT AND RECOMMENDATION**

Plaintiff, Michael Alexander Young, a former Louisiana inmate, filed this *pro se* and *in forma pauperis* civil action pursuant to 42 U.S.C. § 1983.[1] Young sued the District Attorney's Office of New Orleans, Jason Williams, the "Orleans Justice Center Administration Legal Department," Ms. Fairley, and Ms. Delahoussaye.[2] In his original complaint, Young stated his claim, without corrections to grammar or spelling, as follows:

> Jason Williams has allowed the D.A. over my case to not prosecute my case. I've been in jail 13 ½ months, I haven't been to court, since I've been to arringment on 10-2-24. My charge is <u>simple robbery</u>, I have a $10,000 <u>bond</u>. I should have been set for <u>trial</u> <u>6 months</u> after a I was <u>indicted</u>. I've been set back <u>everytime</u> I have a <u>court date.</u> I'm still in <u>motion of hearing.</u> Because of this <u>failure</u> to prosecute, I've been sitting in jail, which allowed me to go through what's been happening to me with <u>OPSO</u>.
>
> Also, my indictment is bad. Half of the grand jury dismissed my charge, and half accepted.
>
> Ms. Fairley has collected my legal mail, and mailed it out while I was on suicide watch. She also came and picked up my statement of account on 7-10-25, while I was on suicide watch. When it came time to return my statement of account form, so I can mail it to the courts, she said she couldn't bring me my form because I'm on suicide watch, and I'm not suppose to have anything. Even though I had deputies that were willing to let her bring me the form, so I can mail it out. Like the previous two times she came, she ignored them, when it came time to bring me the form, in cahoots with <u>OPSO</u>, to sabotage my lawsuit. And she knew my deadline to turn my

---

[1] At the time Young filed this action, he was a pretrial detainee housed at the Orleans Justice Center. He has since been extradited to Phoenix, Arizona, where he is awaiting charges. <u>See</u> Rec. Docs. 3 and 6.

[2] Rec. Doc. 8.

form in was 7-21-25. If she wasn't going to go through with it, she shouldn't have taking anything from jump.

Delahoussaye – Once I went to OJC, on 7-15-25, because my pod at TMH had plumbing issues, that needed to be fixed. I wrote Ms. Fairley on 7-16-25, telling her I'm in the building, on the 2nd floor, can she bring my form, then on the 17th, no response, so I wrote Delahoussaye, explaining I need my form to be mailed off, cuz my deadline was the 21st. She's Ms. Fairley Supervisor, from what I was told.

Low and behold, Ms. Fairley pops up on the 18th with my statement of account form. She tells deputy Pipe she's here to give me my Paper. Pipe tells her I can't have paper, I'm on suicide watch. Then she calls Rank, Sgt Dunn, Captain Jones come in, and escort Ms. Fairly out.

The same thing happens on 7-25-25, when Fairley came. She came when a deputy who wasn't going to let her give me the paper was working. When Deputy Augustine, and Woods had told her on 7-23-25 and 7-24-25 she can bring it, she didn't show up. That's when Fairley said if I want my form, come off suicide watch. Knowing if I come off watch, OPSO will bury me in the hole on 3D, like they did before, and I'm still not going to get the form. She was setting a trap, to lure my off S/W, so OPSO can hurt me. And Ms. Delahoussaye knew all of this, cuz she's the one approved it. After allowing Ms. Fairley to come pick up my form on 7-10-25. On S/W, then 2 previous times I just mentioned.

They go to Dr. Walker, who's over suicide watch, to ask her can she give me the paper, knowing she would say no, to put Dr. Walker on the spot. After that, Ms. Fairley then comes to TMH, and broadcast to the deputies that was helping me, not to give me no paper, whatsoever, per Dr. Walker.

And I shouldn't have nothing in my cell. All of a sudden in cahoots with OPSO. Now hopefully, the courts will drop my lawsuit, since I can't get my statement of account from. Ms. Delahoussaye was right along with the plot.

They went from helping me, to tring to hurt me. Tring to set me up. I still haven't received my statement of account form yet. I working on getting another one, and go through the mailroom, they can bring it over there, and get it signed and mailed.

On 8-4-25, Dr. Wynn, one of the head doctors, who makes decisions about suicide watch, sent out e-mail to all the staff, stating that suicide residents can now have paper and pen. I immediately wrote a grievance, and a request to legal. Ms. Fairley, and Ms. Delahoussaye, stating we can now have paper and pen, they responed back, saying "Sorry Mr. Young, we're not aware of the new rule."

I continue to write greivance to inmate accounts, in which they responded that Ms Fairley said she brought the statement of account from to me, and I mailed it off. Continuing to show they were working with OPSO to sabotage my lawsuit.

2

> Finally, on 8-14-25, a lady came to my room, and asked me did I ever get my statement of account form that she was from Inmate Accounts. I told her No, Ms. Fairley never brought it to me. She said she'll be back, she's going to talk to Ms. Fairley. 45 minutes later, she appeared with my original statement of account form, and a certified copy of my inmate trust fund account statement. So it took from 7-10-25 when I turned it in to get filled out, to 8-14-25 to receive my statement of account form back. Well over the deadline.[3]

In support of his allegations, Young included a copy of a July 30, 2025 Notice of Electronic Filing in <u>Young v. Orleans Parish Sheriff's Office, et al.</u>, 25-cv-1327 "M"(2), indicating that he was ordered to show cause by August 29, 2025, why his complaint in that case should not be dismissed for failure to pay the filing fee or file a properly certified pauper application.[4] Young seeks monetary damages.[5]

Shortly after filing this case, Young advised that he was "finished with Orleans Parish," and that "[t]hey dropped the charges, and gave me credit for time served on 8-19-25."[6] In actuality, Young pled guilty to the lesser offense of theft of property valued between $1,000 and $5,000, and was sentenced to a deferred sentence of less than 14 months at hard labor under La. Code Crim. P. art. 893.[7] As indicated, on September 10, 2025, Young was extradited to Phoenix, Arizona.[8]

Federal law requires that this matter be screened. For example, with respect to actions, such as this one, which are filed *in forma pauperis*, federal law mandates:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …

>     (i)       is frivolous or malicious;

>     (ii)     fails to state a claim on which relief may be granted; or

---

[3] <u>Id.</u> at 6–10.
[4] <u>Id.</u> at 11. In that case, Young sued numerous defendants alleging various constitutional violations relating to his treatment while incarcerated in Orleans Parish Justice Center.
[5] <u>Id.</u> at 12.
[6] Rec. Docs. 3 at 1, 3.
[7] <u>See</u> Orleans Parish District Court's Docket Master in Case No. 563067"J" (Docket Entry 8/18/25), accessed through the Orleans Parish Sheriff's Office Official website at https://www.opso.us.
[8] Rec. Doc. 6 at 1.

(iii)    seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

In addition, because Young is incarcerated, screening is also required by 28 U.S.C. § 1915A. That statute mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."[9] 28 U.S.C. § 1915A(a). Regarding such lawsuits, the statute similarly provides:

On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –

(1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
(2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

A claim is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). When making that determination, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations

---

[9] "As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."  28 U.S.C. § 1915A(c).

must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (footnote, citation, and quotation marks omitted). The United States Supreme Court has held:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

> Young filed this action pursuant to 42 U.S.C. § 1983. In pertinent part, that statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

42 U.S.C. § 1983. Accordingly, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

For the following reasons, even when Young's complaint is liberally construed,[10] his federal civil rights claims are frivolous and/or fail to state a claim on which relief may be granted.

---

[10] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

## I.    District Attorney's Office of New Orleans

Young names the Orleans Parish District Attorney's Office as a defendant. But "Louisiana law does not permit a district attorney's office to be sued in its own name." Hudson v. City of New Orleans, 174 F.3d 677, 680 (5th Cir. 1999); see also Alexander v. City Police of Lafayette, No. 6:11-CV-01749, 2019 WL 2345083, at *6 (W.D. La. Feb. 27, 2019) (noting that a parish district attorney's office is not "a juridical entity with the capacity to be sued"), adopted, 2019 WL 2334196 (W.D. La. May 29, 2019), appeal dismissed, No. 19-30513, 2019 WL 13131386 (5th Cir. July 15, 2019); accord Spikes v. O'Berry, No. 14-2968, 2015 WL 1758053, at *4 (E.D. La. Apr. 17, 2015) (same). Thus, Young's claims against the Orleans District Attorney's Office are frivolous or otherwise fail to state a claim for which relief can be granted and should be dismissed.

## II.    District Attorney Jason Williams

Young also names District Attorney Jason Williams as a defendant. To the extent that Young asserts claims against Williams in his individual capacity, he is immune from suit.

As the United States Fifth Circuit Court of Appeals has explained:

> A prosecutor is absolutely immune for initiating and pursuing a criminal prosecution, for actions taken in her role as advocate for the state in the courts, or when her conduct is intimately associated with the judicial phase of the criminal process. ...
>
>  ... Our decisions applying those of the Supreme Court make clear that prosecutors enjoy absolute immunity for acts taken to initiate prosecution, and that this absolute immunity shelters prosecutors even when they act maliciously, wantonly or negligently.

Loupe v. O'Bannon, 824 F.3d 534, 539 (5th Cir. 2016) (citations, quotation marks, and brackets omitted).

Absolute prosecutorial immunity is therefore sweepingly broad. "[T]he Fifth Circuit has held prosecutors absolutely immune for actions ranging from withholding exculpatory evidence,

disobeying discovery orders, and fabricating evidence, to charging without probable cause pursuant to a constitutionally deficient indictment, and committing prosecutorial misconduct." Willis v. Bastrop County, No. A-18-CV-0093, 2019 WL 252051, at *5 (W.D. La. Jan. 17, 2019) (citing Green v. Texas Government, 704 F. App'x 386, 386-87 (5th Cir. 2017)), adopted, 2019 WL 2572538 (W.D. Tex. Feb. 11, 2019). Simply put: Where, as here, a plaintiff is challenging a prosecutor's actions "intimately associated with the judicial phase of the criminal process," his civil claims must fail because the prosecutor's actions are ones to which "absolute immunity appl[ies] with full force." Imbler v. Pachtman, 424 U.S. 409, 430 (1976).[11]

Further, to the extent, if any, that Young is attempting to hold Williams vicariously liable for the actions of his subordinate Assistant District Attorney, that simply is not permissible in a § 1983 action. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) ("In a § 1983 suit ... – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); Sanchez v. Young County, 866 F.3d 274, 281 (5th Cir. 2017) ("Supervisors cannot be held liable for constitutional violations ... if they had no personal involvement."); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability.").

---

[11] The United States Supreme Court has opined:

> To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system. Moreover, it often would prejudice defendants in criminal cases by skewing post-conviction judicial decisions that should be made with the sole purpose of insuring justice.

Imbler, 424 U.S. at 427-28 (1976) (footnote omitted).

Lastly, if Young is attempting to assert an official-capacity claim against Williams, no such official-capacity claim has been properly pled. The United States Fifth Circuit Court of Appeals has noted:

> For purposes of "official capacity" suits under § 1983, the district attorney's office resembles other local government entities. Therefore, we advert to the Supreme Court's development of principles for determining whether a municipality or other local government entity should be held liable under 42 U.S.C. § 1983 for the constitutional tort of its employee.

Burge v. Parish of St. Tammany, 187 F.3d 452, 470 (5th Cir. 1999). The Fifth Circuit has further held:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official copy or custom.

Spiller v. City of Texas City, Police Department, 130 F.3d 162, 167 (5th Cir. 1997) (quotation marks, brackets, and citations omitted). "A plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." Colle v. Brazos County, Texas, 981 F.2d 237, 245 (5th Cir. 1993). Rather, he must identify the policy or custom which allegedly caused the deprivation of his constitutional rights. See, e.g., Murray v. Town of Mansura, 76 F. App'x 547, 549 (5th Cir. 2003); Treece v. Louisiana, 74 F. App'x 315, 316 (5th Cir. 2003).

In the instant case, Young does not allege that the purported violations here stemmed from an official policy or custom, much less identify such a policy or custom. Therefore, no official-capacity claim has been properly stated against this defendant. See, e.g., Dantin v. Larose, No. 18-11233, 2018 WL 7499824, at *2 (E.D. La. Dec. 28, 2018), adopted, 2019 WL 969990 (E.D. La. Feb. 28, 2019).

Accordingly, Young's civil rights claims against Williams in his individual and official capacities should be dismissed.

## III.    Orleans Justice Center Administration Legal Department

Young lists "Orleans Justice Center Administration Legal Department" as a defendant. Neither the Orleans Justice Center nor the "Legal Department" is a proper defendant, however. In Louisiana, jail facilities are not "legally empowered to do" anything independently of either the respective parish officials or the parish sheriff. Roberts v. Sewerage and Water Bd. of New Orleans, 634 So. 2d 341, 347 (La. 1994). Thus, "a prison or jail or its administrative departments" do not have capacity to be sued. Douglas v. Gusman, 567 F. Supp. 2d 877, 892 (E.D. La. 2008) (citations omitted). Instead, a § 1983 action must be filed against an actual identified person, not a department or general staff group at the jail. See Carter v. Strain, No. 09-3401, 2009 WL 2390808, at *3 (E.D. La. July 31, 2009) (citing August v. Gusman, No. 06-3962, 2008 WL 466202, at *7 (E.D. La. Feb. 13, 2008); Staritz v. Valdez, No. 06-CV-1926, 2007 WL 1498285, at *2 (N.D. Tex. May 21, 2007); Banks v. United States, No. 05-6853, 2007 WL 1030326, at *11 (E.D. La. Mar. 28, 2007)). And, with respect to the § 1983 claims, a jail is not a "person" subject to suit under the statute. See Fields v. Orleans Par. Sheriff, No. 13-169, 2013 WL 6388571, at *1 (E.D. La. Dec. 6, 2013) (citations omitted).

Accordingly, Young's civil rights claim against the "Orleans Justice Center Administration Legal Department" should be dismissed.

## IV.    Fairley and Delahossaye

Young implies that defendants Fairley and Delahoussaye denied him his constitutional right of access to courts because they delayed providing him the required certified statement of account form to submit in support of his pauper application in case number 25-cv1327 "M"(2).

Inmates clearly have a constitutional right of access to the courts, and that right extends to pretrial detainees. See United States v. Moya-Gomez, 860 F.2d 706, 743 (7th Cir. 1988); Wetzel v. Strain, No. 09-7048, 2010 WL 744993, at *3 (E.D. La. Feb. 26, 2010); Kirkpatrick v. Daugherty, No. 6:05cv461, 2006 WL 2401108, at *4 (E.D. Tex. Aug. 17, 2006). "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." Vaccaro v. United States, 125 F.3d 852, 1997 WL 574977, at *1 (5th Cir. 1997) (quotation omitted).

Significantly, an access to the courts claim is cognizable **only** if the alleged deprivation resulted in actual prejudice to the plaintiff in his litigation. See, e.g., Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999) ("[A]n inmate alleging denial of access to the courts must demonstrate an actual injury stemming from defendants' unconstitutional conduct."); Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998) ("[W]ithout proving an actual injury, a prisoner cannot prevail on an access-to-the-courts claim."); McDonald v. Steward, 132 F.3d 225, 230–31 (5th Cir. 1998)("[B]efore a prisoner may prevail on a claim that his constitutional right of access to the courts was violated, he must demonstrate that his position as a litigant was prejudiced by his denial of access to the courts." (quotation marks omitted)); Walker v. Navarro County Jail, 4 F.3d 410, 413 (5th Cir. 1993). The plaintiff must "demonstrate that the alleged shortcomings ... hindered his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343, 351 (1996). In Lewis, the Supreme Court made clear that an inmate **must establish actual injury** to state a claim for denial of his right of access to the courts. In examining the particular claims of the inmates in the Lewis case, the Court stated that the First Amendment right of prisoners to access to the courts is the right to

"have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." Id. at 356.

It is clear that Young's ability to exercise his right of access to the courts for purposes of his civil litigation has not been unduly impeded. Young has filed four lawsuits, including this one, since June 2025. Two of those lawsuits were simultaneously filed with this one.[12] "[C]ausation is an element of a [S]ection 1983 claim; [defendants'] actions must have actually caused the deprivation ... of which [plaintiff] complains." Hart v. O'Brien, 127 F.3d 424, 446 (5th Cir. 1997), abrogated in part on other grounds as recognized in Spivey v. Robertson, 197 F.3d 772 (5th Cir. 1999); accord Brown v. Bryan County, OK, 219 F.3d 450, 457 (5th Cir. 2000). While Young claims that defendants delayed providing him with a certified statement of his account related to his first lawsuit, he has not demonstrated any resulting prejudice. Court records demonstrate that Young eventually submitted his application for leave to proceed in forma pauperis in case no. 25-cv-1327 "M"(2), the motion was granted, and that case is currently undergoing screening.[13] Accordingly, Young suffered no prejudice as a result of the defendants' delayed provision of the certified statement of account, and his access-to-courts claims should be dismissed. Allen v. Richardson, No. 5:15-cv-0524, 2015 WL 9652669, at *7 (W.D. La. June 4, 2015) (no prejudice resulting from alleged refusal to timely execute the statement of account where plaintiff ultimately submitted his pauper application and was afforded pauper status), adopted, 2016 WL 75093 (W.D. La. Jan. 6, 2016).

---

[12] Young v. Orleans Parish Criminal District Court, et al., 25-cv-1751 "A"(1), and Young v. Public Defender's Office, et al., 25-cv-1753 "R"(3).
[13] Young v. Orleans Parish Sheriff's Office, et al., 25-cv-1327 "M"(2) at Rec. Docs. 7 and 8.

For the foregoing reasons, Young's claims against defendants Ms. Fairley and Ms. Delahoussaye concerning inadequate access to the court are legally frivolous and fail to state a claim upon which relief can be granted under § 1983, and the claims should be dismissed.

Finally, it is unclear whether Young intended to assert a conspiracy claim against defendants Fairley and Delahoussaye. Regardless, "a conspiracy claim is not actionable without an actual violation of section 1983." Hale v. Townley, 45 F.3d 914, 920 (5th Cir. 1995) (quoting Pfannstiel v. City of Marion, 918 F.2d 1178, 1187 (5th Cir. 1990). Because Young has failed to state a valid claim for the violation of any constitutional right, any conspiracy claim necessarily fails and should be dismissed for failure to state a claim.

## RECOMMENDATION

It is therefore **RECOMMENDED** that Young's federal civil rights claims against defendants be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); see Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this  28th  day of October, 2025.


_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**